UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

LINDA BENBOW,

                              Plaintiff,

              -against-                                          1:11-CV-0870 (LEK/CFH)

STATE UNIVERSITY OF NEW YORK-
NEW PALTZ,

                              Defendant.
_____

<u>**MEMORANDUM-DECISION and ORDER**</u>

## I.    INTRODUCTION

       In this employment discrimination case, Defendant State University of New York-New Paltz

("SUNY-NP" or "Defendant") has moved pursuant to Federal Rule of Procedure 12(b)(6) to dismiss

*pro se* Plaintiff Linda Benbow's ("Plaintiff") Amended Complaint.  <u>See</u> Dkt. Nos. 27 ("Motion");

24 ("Amended Complaint").  For the following reasons, the Motion is granted in part and denied in

part.

## II.   BACKGROUND[1]

       The parties are presumed to be familiar with the background of this case.  For a complete

statement of Plaintiff's allegations and claims, reference is made to the Amended Complaint.

Plaintiff is an African-American woman.  Am Compl. ¶ 9.  She began working for Defendant in

1999 as an adjunct instructor in the Black Studies department.  <u>Id.</u> ¶ 8.  A year later, she became a

_____

       [1] Because this matter is before the Court on a motion to dismiss, the allegations of the
Amended Complaint are accepted as true and form the basis of this section.  <u>See</u> <u>Boyd v.</u>
<u>Nationwide Mut. Ins. Co.</u>, 208 F.3d 406, 408 (2d Cir. 2000); <u>see also</u> <u>Matson v. Bd. of Educ.</u>, 631
F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a
plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable
inferences in her favor").

full-time lecturer in the Sociology department ("Department"). Id. ¶ 9. Plaintiff was the first and only African-American woman to teach in the Department. Id. Upon completion of her PhD, Plaintiff was promoted to Assistant Professor in 2007. Id. ¶ 18. Plaintiff's employment with Defendant was terminated as of January 1, 2010. Id. ¶ 40.

Plaintiff alleges that she was subjected to a variety of race-based discrimination throughout her employment. Much of the Amended Complaint describes mistreatment by two Chairs of the Department: Harold Jacobs ("Jacobs"), Chair from 2000 to 2003, and Anne Roschelle, Chair from 2003 through Plaintiff's termination in 2010. Id. ¶¶ 13, 19. In 2001, Jacobs told Plaintiff that, in contrast to Department coworkers who had been "socialized from a young age to assume the role of college professor," Plaintiff "might be out of [her] league trying to be a college professor." Id. ¶ 13 (alteration in original). Plaintiff was ostracized and excluded from social functions held by both Chairs. Id. ¶¶ 13, 26. Roschelle repeatedly commented, often publicly, that Plaintiff was: (1) not qualified for her position; (2) an "Affirmative Action hire" who had been "imposed" upon the Department; (3) "redundant" or "long winded"; (4) "personally and professional[ly] inept"; (5) undeserving of Departmental resources; and (6) not on track to finish her PhD and therefore facing termination. Id. ¶¶ 19, 24, 27, 44. Roschelle also asked Plaintiff if she attended church, as "all black people go to church"; stated that Plaintiff was "intimidating" because she was "poised and professional"; and suggested that Plaintiff should be more understanding of a colleague's problem because, unlike the members of the Department who came from middle class backgrounds, Plaintiff "c[a]me from Harlem." Id. ¶ 44. Roschelle also tightly surveilled Plaintiff; was "openly hostile, aggressive, dismissive, and offensive"; and angrily demanded that Plaintiff meet arbitrarily imposed deadlines that other members of the Department, including Roschelle, were not required to meet.

Id. ¶¶ 24, 26.  Roschelle expressed her dislike for Plaintiff with exaggerated gestures and facial expressions, and encouraged the ostracism of Plaintiff by other members of the Department.  Id. ¶¶ 23-24, 26.

In 2004, a racist and sexist caricature was drawn on a message board on Plaintiff's door. Plaintiff alleges that nothing was done to address this caricature and that, after Plaintiff complained about this incident and other instances of racism, Roschelle stated that her complaint was "unfair to the college and to her colleagues."  Id. ¶ 22.  Furthermore, Roschelle, in contravention of SUNY-NP policy, allowed a white male member of the Department to teach a course that Plaintiff had developed and taught for many years and to use Plaintiff's course materials without attribution.  Id. ¶ 23.  During Plaintiff's hospitalization and medical leave in early 2007, Roschelle repeatedly sought additional documentation of Plaintiff's illness, despite Plaintiff's provision of adequate documentation, and called Plaintiff's doctor's office seeking information regarding Plaintiff's illness.  Id. ¶ 28.

From 2000-2006, Plaintiff received a significantly lower salary than her white colleagues, including those with shorter SUNY-NP tenures.  Id. ¶ 11.  Although Plaintiff's salary was "brought in line" with the salaries of her colleagues in 2007, a previously granted discretionary salary increase was "deleted" from her salary upon her promotion to Assistant Professor that same year—a deletion never before undertaken in the Department or SUNY-NP.  Id. ¶ 21.  From 2000 to the completion of her dissertation in 2007, Plaintiff did not receive financial assistance for her research, although all full-time white faculty members in the Department, including those whose employment began after Plaintiff's, did.  Id. ¶ 12.  During Plaintiff's first year of employment, Dean of Liberal Arts & Sciences Gerald Benjamin ("Benjamin") gave her a heavier class load than that of any other teacher

3

in the Department.  Id. ¶¶ 10, 11.  Although Plaintiff's class load was subsequently reduced, she

alleges that this reduction was insufficient to offset the disproportionate number of classes she had

previously been required to teach.  Id. ¶¶ 10, 11.  Plaintiff, unlike her white colleagues, was also not

provided with a "functional work space" or Department-issued computer.  Id. ¶ 13.

Plaintiff repeatedly complained throughout her employment about this discriminatory

treatment, including, *inter alia*, sending letters and emails to, and meeting with, various members of

the SUNY-NP administration in 2002, 2005, 2006, 2007 and August 2008.  Id. ¶¶ 12, 15, 24, 26-27.

These complaints addressed, *inter alia*, Roschelle's continuous "refer[ence] to [Plaintiff] in negative

caricatures and stereotypes held towards African[-]American people and behav[ior] towards

Plaintiff in ways designed to make the negative[] characterization she believed about Plaintiff

become true."  Id. ¶ 27; see also id. ¶ 30.

In September 2008, a committee—made up of all members of the Department except

Roschelle—recommended that Plaintiff be given a two-year renewal of her appointment as an

assistant professor.  Id. ¶ 31.  Roschelle, however, formally recommended non-renewal.  Id. ¶ 32.

She acknowledged that Plaintiff was "unique" as the only African-American member of the

Department but stated that Plaintiff had "verbally, violently attacked her"; was "extremely

intimidating" to faculty and students; had been dishonest about working outside of the University;

and received poor student evaluations.  Id.  In making her recommendation, Roschelle evaluated

Plaintiff's entire career at SUNY-NP; Plaintiff contends that it was standard practice to evaluate

only a professor's previous year of service—not her full career—when deciding upon an application

for contract renewal.  Id. ¶ 29.  Moreover, Roschelle's criticisms were inaccurate: members of the

Department were permitted to engage in outside work, and Plaintiff received highly favorable

4

student evaluations.  Id. ¶¶ 28, 32.  Nevertheless, Dean of Liberal Arts and Sciences James Schiffer ("Schiffer") adopted, without investigation, Roschelle's evaluation of Plaintiff's conduct and her termination recommendation.  Id. ¶ 35.  The "Central Committee" ("Committee") then voted not to renew Plaintiff's contract and stated that she had "insufficient publications."  Id. ¶ 26.  In December 2008, Provost David Lavallee ("Lavallee") formally terminated Plaintiff's employment effective January 2010.  Id. ¶ 37.  He indicated that her performance at SUNY-NP "did not warrant retention."  Id.

On May 26, 2009, Plaintiff filed a Charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC").  Dkt. No. 27-2 ("Charge").  She later submitted a Rebuttal to SUNY-NP's EEOC submission.  Dkt. No. at 30-45[2] ("Rebuttal").  Plaintiff commenced this action in July 2012.  See Dkt. No. 1 ("Original Complaint").  Defendant moved to dismiss the Original Complaint.  See Dkt. No. 14 ("First Motion").  Plaintiff was then granted leave to, and did, file the Amended Complaint.  See Dkt. No. 22; Am. Compl.  Construed generously, the Amended Complaint brings Title VII claims for retaliatory and race-based discriminatory pay, hostile work environment, and termination, as well as a 42 U.S.C. § 1981 claim.  See Am. Compl. ¶¶ 43, 56, 61, 63, 65.  Defendant's Motion and accompanying Memorandum followed, and Plaintiff responded to the Motion.  Mot.; Dkt. Nos. 27-1 ("Memorandum"); 30 ("Response").

## III.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl.

---

[2] The pagination corresponds to the page numbers assigned by ECF.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. "[U]nadorned, the-defendant-unlawfully-harmed-me accusation[s]" do not suffice. Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Thus, although a court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff, see Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006), an action is subject to dismissal where the court is unable to infer more than the "sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

## IV.     DISCUSSION

### A.  Title VII Claims

#### 1. Exhaustion

A plaintiff bringing a Title VII claim must have substantively exhausted her administrative remedies by setting forth her claims with the EEOC or a qualifying state anti-discrimination agency. See Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 82-83 (2d Cir. 2001). "The exhaustion requirement exists to afford the administrative agency the opportunity to investigate, mediate, and take remedial action." Prophete v. Ed Mitchell, Inc., No. 05-CV-0912, 2006 WL 1668024, at *2 (D. Conn. June 15, 2006). It applies not only to causes of action but also to underlying factual allegations. See Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003); McGuire v. U.S. Postal Serv., 749 F. Supp. 1275, 1287 (S.D.N.Y. 1990) (noting that the exhaustion requirement applies to "acts of discrimination"); see also Padilla v. Bechtel Const. Co., No. CV 06 286, 2007 WL 1219737, at *7 (D. Ariz. 2007) (finding exhaustion applicable to protected activity underlying retaliation claim);

Ingle v. Circuit City, No. 99-CV-1297, 2006 WL 6086293, at *2 (S.D. Cal. Feb. 6, 2006) (same).

"[P]recise pleading is not required for . . . exhaustion purposes." Deravin, 335 F.3d at 201. Thus, a plaintiff may bring claims not set forth in the administrative complaint if they are "reasonably related" to factual allegations in that complaint. Holtz, 258 F.3d at 83. A claim is reasonably related where "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Butts v. City of New York, 990 F.2d 1397, 1402 (2d Cir. 1993) (quotation marks omitted). "In this inquiry, the focus should be on the *factual allegations* made in the [administrative] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006) (quotation marks omitted and emphasis added); see also Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 178 (2d Cir. 2005) ("A complaint of retaliation could reasonably be expected to inquire into other instances of alleged retaliation by the same actor." (citation, quotation marks, and brackets omitted)). A plaintiff may exhaust her claims not only in her initial administrative charge, but also in subsequent submissions to the EEOC. Cf. Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP, 869 F. Supp. 2d 378, 391 (S.D.N.Y. 2012) (finding plaintiff's age- and gender-based discrimination claims unexhausted where Plaintiff's EEOC rebuttal "[did not] contain[] any mention of age or gender"); Huda v. Lockheed Martin, No. 07-9090, 2008 WL 191300, at *3 (E.D. La. Jan. 22, 2008) (examining rebuttal evidence submitted by Plaintiff to EEOC to determine whether reasonable investigation would have covered allegations at issue).

Defendant argues that Plaintiff failed to exhaust her: (1) discriminatory and retaliatory hostile work environment claim; and (2) retaliatory termination claim to the extent it is premised on

2008 protected activity.  See Mem. at 2-3.  Both arguments fail.

a.  Discriminatory and Retaliatory Hostile Work Environment

As discussed in greater detail *infra*, a plaintiff may bring Title VII discrimination and

retaliation claims premised on discrete retaliatory or discriminatory acts—such as termination or

failure to promote—or on a hostile work environment, which is "based on the cumulative effects of

individual acts and [is] potentially comprised of single acts of harassment that may not otherwise be

actionable on their own."  Costanzo v. U.S. Postal Serv., No. 00 CIV. 5044, 2003 WL 1701998, at

*10 (S.D.N.Y. Mar. 31, 2003); see also Hahn v. Bank of Am. Inc., No. 12 Civ. 4151, 2014 WL

1285421, at *22 n.14 (S.D.N.Y. Mar. 31, 2014) (noting that a retaliation claim may be premised on

a hostile work environment).

Defendant argues that Plaintiff did not exhaust her hostile work environment claims because

the Charge "allege[s] only discrete acts of alleged discrimination," including discrimination in

compensation and termination of employment.  Mem. at 2.  This is incorrect.  In the Charge,

Plaintiff asserts that she was subjected to "harassment" based on her race and color.  Charge at 3.[3]

She notes that her supervisor "harassed" her, referred to her as an "affirmative action hire who

would never get a Ph[D]," and otherwise subjected her to "symbolic violence."  Id.  These

allegations were more than sufficient to put the EEOC on notice that Plaintiff was complaining not

only about discrete actions, such as discriminatory and retaliatory termination and pay, but also

about a hostile work environment created by her supervisor's conduct.  Moreover, the Rebuttal is

rife with factual allegations indicative of a hostile work environment.  It notes that Roschelle

"imputed" specific stereotypes about African Americans to Plaintiff and disseminated these

---

[3] The pagination corresponds to the page numbers assigned by ECF.

stereotypes among new Department members. Rebuttal at 34. Plaintiff also complains about "gossip and delegitimization" and states that Roschelle voiced her opinion that Plaintiff was not qualified for her position and had been given "special treatment" because she was African American; "publicly denigrated" the quality of Plaintiff's work; gossiped about Plaintiff; screamed at Plaintiff; made demeaning comments, gestures, and facial expressions towards Plaintiff in public; slammed her door in Plaintiff's face; and subjected Plaintiff to symbolic violence. Id. at 37. These factual allegations are indicative of a hostile work environment. See, e.g., Rother v. NYS Dep't of Corr. & Cmty. Supervision, 970 F. Supp. 2d 78 (N.D.N.Y. 2013) (Kahn, J.) (denying motion to dismiss hostile work environment claim where plaintiff was subjected to a "public verbal tirade"). Plaintiff's claims were therefore properly exhausted.

### 2. Retaliatory Termination

To make out a retaliation claim under Title VII, a plaintiff must demonstrate that, *inter alia*, she engaged in protected activity. See Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 698 (2d Cir. 2012). An employee engages in protected activity when she complains about or otherwise opposes conduct that she reasonably believes constitutes forbidden discrimination or retaliation. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990). Defendant argues that Plaintiff may premise her retaliation claim on only her September 2002 and May 2006 internal complaints, because the Charge does not mention her subsequent complaints during the 2008 re-appointment process and therefore any claim based on those complaints is unexhausted. See Mem. at 9 & n.4. Again, this is incorrect. Plaintiff states in her Charge that "[i]n *September 2008*, I complained to newly appointed Dean Schiffer and to Provost Lavallee about my supervisor's discriminatory treatment involving my reappointment and prior events. . . . I believe I was retaliated

against for complaining." Charge at 3 (emphasis added). A retaliation claim premised on this protected activity is therefore exhausted.

### 2. *Timeliness*

#### a. Law

In New York, Title VII claims must be "filed" with the EEOC within 300 days[4] of the date on which the "alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1); see also 29 U.S.C. § 626(d)(1); Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996). "This statutory requirement is analogous to a statute of limitations." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996). "In order to recover for a *discrete act* of discrimination or retaliation, such as a discharge, failure to hire, or failure to promote, the plaintiff must demonstrate that the discrete act took place within the statutory time period." Sanderson v. N.Y.S. Elec. & Gas Corp., No. 13-1603-CV, 2014 WL 1243854, at *2 (2d Cir. Mar. 27, 2014) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101,114 (2002)) (emphasis added). However, under the "continuing violation" doctrine, "a claim that the plaintiff suffered a hostile work environment . . . is timely so long as one act contributing to the claim occurred within the statutory period." Sanderson, 2014 WL 1243854, at *2. Thus, for the doctrine to apply, those acts outside the 300-day window must be sufficiently related to a timely act so as to constitute a single hostile work environment. See Morgan, 536 U.S. at 120 (considering whether otherwise time-barred incidents involved the same

---

[4] "Discrimination claims under Title VII must ordinarily be 'filed' with the EEOC within 180 days of the date on which the alleged unlawful employment practice occurred. However, if the alleged discrimination took place in a state or locality that has its own antidiscrimination laws and an agency to enforce those laws, then the time period is extended to 300 days. New York . . . has both antidiscrimination laws and an antidiscrimination agency. The 300-day limit therefore applies." Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996) (citations omitted).

type of employment actions, occurred relatively frequently, and were perpetrated by the same managers as timely acts in determining whether they were part of the same actionable hostile environment claim and therefore timely); Bembry v. Darrow, 97 F. Supp. 2d 281, 286 (N.D.N.Y. 2000), aff'd 7 F. App'x 33 (2d Cir. 2001); Oyelola v. Hartford Fin. Servs. Grp., Inc., No. 12-CV-01685, 2014 WL 496880, at *9 (D. Conn. Feb. 5, 2014) ("[T]he court finds that while the[se] [acts] may constitute a hostile work environment claim, they are too far attenuated from those allegations that do fall within the limitations period to create a continuing violation claim."); Rivera v. P.R. Home Attendants Servs., Inc., 930 F. Supp. 124, 130 (S.D.N.Y. 1996) ("[T]he continuing violation doctrine applies if the discriminatory acts within and without the limitation period are sufficiently similar and frequent to justify a conclusion that both are part of a single discriminatory practice chargeable to the employer." (quotation marks and alteration omitted)).

The line dividing "discrete acts" from acts that may underlie a hostile work environment claim is not always clear. Generally, however, if an act is not actionable on its own, it may be treated as part of a hostile work environment and therefore potentially subject to the continuing violation doctrine. See Morgan, 536 U.S. at 115 (noting that a hostile work environment is comprised of individual acts that "may not be actionable on [their] own" but become actionable through their "cumulative effect"); Thomas v. N.Y.C. Dep't of Educ., 938 F. Supp. 2d 334, 348 (E.D.N.Y. 2013) (contrasting "discrete acts, actionable on their own" with "individual acts which . . . had the cumulative effect of creating a hostile work environment"); Dauer v. Verizon Commc'ns Inc., No. 03 CIV. 05047, 2009 WL 186199, at *2 (S.D.N.Y. Jan. 26, 2009) ("Disparate treatment claims based on discrete acts such as a pay cut or termination of employment are treated differently from hostile work environment claims, which are based on the 'cumulative effect of individual acts'

11

that 'may not be actionable on . . . [their] own.'" (quoting Morgan, 536 U.S. at 115)); Costanzo, 2003 WL 1701998, at *10 ("[H]ostile work environment claims are based on the cumulative effects of individual acts and are potentially comprised of single acts of harassment that may not otherwise be actionable on their own."); see also Rivera v. P.R. Home, 930 F. Supp. at 132 (finding continuing violation where plaintiff, had she asserted her claim earlier, would have "born the risk" that the challenged conduct was not actionable).

Only discriminatory employment actions that are "adverse" are actionable under Title VII. Terry v. Ashcroft, 336 F.3d 128, 137-38 (2d Cir. 2003). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Id. at 138 (quotation marks omitted). Adverse employment actions may include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Patrolmen's Benevolent Ass'n v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002) (alteration in original and quotation marks omitted). Retaliation is actionable only where it amounts to a materially adverse action—an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006) (quotation marks omitted). This is a similar, albeit "lesser standard" than the adverse-employment-action standard applicable to discrimination claims. Evarts v. S. New Eng. Tel. Co., No. CV 112, 2006 WL 2864716, at *10 (D. Conn. Oct. 2, 2006).

### b. Analysis

Plaintiff's discriminatory and retaliatory pay allegations are necessarily premised on discrete acts. See Crosland v. City of New York, 140 F. Supp. 2d 300, 308 (S.D.N.Y. 2001) ("It is

well-established that . . . failure[s] to compensate adequately . . . are . . . discrete acts which do not constitute a continuing violation"), aff'd sub nom. Crosland v. Safir, 54 F. App'x 504 (2d Cir. 2002). Plaintiff alleges that she filed her Charge in January 2009. See Am. Compl. ¶ 5. Construing the Amended Complaint in a light most favorable to Plaintiff, the Court will treat the Charge as filed on January 1, 2009. To the extent Plaintiff's claims are based on pay she received more than 300 days prior—*i.e.*, before March 7, 2008—they are time-barred. Her claims for pay received after that date are timely. See 42 U.S.C. § 2000e-5(e). Plaintiff's claim for discriminatory and retaliatory termination is also timely. "In the context of discriminatory [and retaliatory] termination, the 300-day limit begins from the date upon which the employee receives a definite notice of the termination." Bordianu v. Educ. Broad. Corp., No. 07-CV-1762, 2008 WL 1882106, at *4 (E.D.N.Y. Apr. 24, 2008) (quotation marks omitted). The final decision to terminate Plaintiff was made in December 2008, Am. Compl. ¶ 37, which is therefore the earliest date Plaintiff could have received definite notice of her termination. She filed the Charge within 300 days.

None of the remaining conduct underlying Plaintiff's claims constitutes a discrete act of discrimination or retaliation. Construed in the light most favorable to Plaintiff, the Amended Complaint does not indicate that the challenged class assignments, lack of office equipment, criticism and ostracism by supervisors and coworkers, lack of research funding, failure to remedy the racist caricature, failure to properly attribute Plaintiff's course design, difficult schedule, or questioning of Plaintiff's doctor constituted, *in isolation*, either an adverse employment or materially adverse action. Thus, if the otherwise untimely acts are sufficiently related to timely acts to form a single hostile work environment, the continuing violation doctrine permits Plaintiff to premise her claim on all of these acts.

Plaintiff has plausibly alleged the requisite relationship between those acts that occurred before and those acts that occurred after March 7, 2008. All involve Plaintiff's treatment by, and/or as a member of, the Department. <u>See generally</u> Am. Compl. The large majority were perpetrated by a single actor—Roschelle—and others were perpetrated by Jacobs, who held the same position as Roschelle. Moreover, Plaintiff alleges that much of this conduct was frequent and repeated. <u>See, e.g.</u>, Am. Compl. ¶¶ 32 (noting that, in fall 2008, Roschelle characterized Plaintiff, as "she had been doing from 2003 to 2008," as a "thief and deceitful person"), 44 ("[F]rom the moment [Plaintiff] began employment at SUNY-NP, Roschelle engaged [in] a pattern[] of increasingly abusive . . . behavior towards her and encouraged other[s] to do so on her behalf."). These allegations plausibly indicate a continuing violation.

Defendant nevertheless contends that Plaintiff's reappointments, promotion, raise, and favorable student evaluations "necessarily establish that a continuing violation did not exist and, at a minimum, any alleged violation ended, or was interrupted, when . . . [P]laintiff was treated appropriately and favorably." Mem. at 6-7. This is not so. An employee need not allege consistently negative treatment for application of the continuing violation doctrine. <u>See, e.g.</u>, <u>Drew v. Plaza Const. Corp.</u>, 688 F. Supp. 2d 270, 274, 279 (S.D.N.Y. 2010) (finding continuing violation plausibly alleged despite plaintiff's receipt of a raise during the relevant period). Indeed, by Defendant's logic, the doctrine would *never* apply: the mere retention of an employee would "interrupt" the continuity of a hostile work environment. And Defendant's argument is particularly misplaced in this case: the formal "favorable" treatment to which Defendant points has little bearing on the continuity *vel non* of Rochelle's day-to-day inter-personal mistreatment of Plaintiff, which forms the heart of Plaintiff's hostile work environment claims. <u>See generally</u> Am. Compl. Plaintiff

has therefore sufficiently alleged the existence of a continuing violation.

### 2. Merits

#### a. Retaliatory and Discriminatory Hostile Work Environment

In order to make out a hostile work environment claim, "the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); see also Hahn, 2014 WL 1285421, at *22 n.14 (noting that retaliatory hostile work environment claims are generally analyzed pursuant to the same severe-or-pervasive standard applicable to discriminatory hostile work environment claims). A hostile work environment is actionable only when it is the result of forbidden discrimination or retaliation. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001); Hahn, 2014 WL 1285421, at *22 n.14.

Defendant argues that Plaintiff has not alleged conduct: (1) sufficiently severe or pervasive; or (2) motivated by her race.[5] See Mem. at 10-11. For largely the same reasons discussed *supra* with respect to the continuing violation doctrine, Plaintiff has plausibly alleged severity or pervasiveness. See Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994) (affirming finding of continuing violation that was "supported by the same evidence that established her hostile-environment claim"); Zavala v. Cornell Univ., No. 11-CV-1403, 2014 WL 1123418, at *5 n.10 (N.D.N.Y. Mar. 21, 2014) (Kahn, J.). The Amended Complaint notes that, throughout Plaintiff's employment, she was given excessive class assignments, a difficult schedule, and inadequate office equipment; publicly criticized, ridiculed, monitored, surveilled, and reprimanded by her supervisors;

---

[5] Defendant does not argue that Plaintiff has not plausibly alleged that the hostile work environment was retaliatory. See generally Mem.

ostracized by her coworkers; denied research funding and an adequate office environment; and subjected to an unremedied racist caricature and the plagiarizing of her course designs. See generally Am. Compl. Plaintiff, as noted *supra,* alleges that much of this conduct was repeated and frequent. These allegations plausibly indicate severity or pervasiveness. See Rother, 2013 WL 4774484, at *6 (denying motion to dismiss where plaintiff alleged, *inter alia*, "vigilant monitoring"); Pratesi v. N.Y.S. Unified Ct. Sys., No. 08-4828, 2010 WL 502950, at *11 (E.D.N.Y. Feb. 9, 2010) (finding plaintiff's allegations of harassing comments sufficient to withstand motion to dismiss); Anderson v. Nassau Cnty. Dep't of Corr., 558 F. Supp. 2d 283, 295-96 (E.D.N.Y. 2008) (denying summary judgment where plaintiff alleged discriminatory statements and improper discipline).

Defendant reiterates its contention that its promotion and retention of Plaintiff somehow negate her hostile work environment claim. See Mem. at 10. This argument is as unavailing with respect to the hostility or pervasiveness of the hostile work environment as it is to its continuity—surely the sting of, *inter alia*, daily racist public criticism and ostracism is not rendered bearable by favorable formal personnel actions. See, e.g., Drew, 688 F. Supp. 2d at 274, 280 (finding severity or pervasiveness plausibly alleged despite plaintiff's receipt of a raise). Likewise, that Plaintiff's students rated her favorably, see Mem. at 10, has no bearing on the hostile work environment created by her supervisors and coworkers.

Plaintiff has also plausibly alleged that her race motivated the hostile work environment. As noted *supra,* she alleges that Roschelle made numerous racial-animus-evincing comments, treated white comparators more favorably than Plaintiff, and contravened established Department and SUNY-NP policies and procedures in her mistreatment of Plaintiff. This suffices. Cf. Chambers v.

16

TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994) (noting that comments concerning the performance abilities of a plaintiff's "protected group" may "contribut[e] to a permissible inference of discriminatory intent"); Russell v. Aid to Developmentally Disabled, Inc., No. 12-CV-389, 2013 WL 633573, at *12 (E.D.N.Y. Feb. 20, 2013) (finding that plaintiff's allegations that she received more severe punishment than male co-workers constituted evidence of discriminatory animus); Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107 (2d Cir. 2004) (denying employer's motion for summary judgment where plaintiff offered evidence of discriminatory comments); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1226-27 (2d Cir. 1994) (finding sufficient evidence of discriminatory intent where employer's treatment of plaintiff violated its own policy); Bonura v. Chase Manhattan Bank, N.A., 795 F.2d 276, 277 (2d Cir. 1986) (same).

b. Discriminatory Termination

Defendant contends that Plaintiff has failed to plausibly allege that the termination of her employment was motivated by her race. See Mem. at 11. Under the "cat's paw" theory, an employer may be liable for an adverse action where the ultimate decision maker is not motivated by discriminatory animus, if another "supervisor performs an act motivated by . . . animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action." Staub v. Proctor Hosp., 131 S.Ct. 1186, 1193 (2011). Defendant acknowledges that Plaintiff has plausibly alleged that Roschelle was motivated by discriminatory animus, but contends that the Amended Complaint indicates that: (1) Roschelle lacked the authority to, and did not, terminate Plaintiff; and (2) the decisionmakers who terminated Plaintiff's employment did not "rel[y] on any allegedly discriminatory actions of remarks of [Roschelle]." Mem. at 11. Again, this is not so. Read in a light most favorable to Plaintiff, the

Amended Complaint alleges that Roschelle's recommendation that Plaintiff's employment be terminated was relied upon and adopted by Schiffer, whose recommendation was in turn relied upon and adopted by the Central Committee, whose recommendation was in turn relied upon and adopted by Lavallee in terminating Plaintiff's employment. See Am. Compl. ¶¶ 32-37; see also id. ¶ 35 (alleging that Schiffer "reiterated all of the negative characterization of Plaintiff's performance made by Roschelle . . . without investigating any of the claims made by Roschelle"). This transitive reliance suffices. Cf. Rose v. N.Y. City Board of Education, 257 F.3d 156, 162 (2d Cir. 2001) (finding that discriminatory comments of plaintiff's supervisor, who did not have formal firing authority but who "had enormous influence in the decisionmaking process," constituted direct evidence of discrimination); Rosa v. The Jewish Home of Central N.Y., No. 04-CV-581, 2006 WL 2714332, *8 (N.D.N.Y. Sept. 22, 2006) ("[D]efendant has not ruled out the possibility that a fact-finder could conclude that [the non-decision-maker's] alleged bias should be imputed to defendant on the ground that her report played a substantial role in the decision to terminate plaintiff."); Downes v. Potter, No. 04-CV-3876, 2006 WL 2092479, at *10 (E.D.N.Y. July 26, 2006); Sadki v. Suny Coll. at Brockport, 310 F. Supp. 2d 506, 513 (W.D.N.Y. 2004) ("[T]he element of causation-i.e., that an adverse employment action was caused by discrimination—can be satisfied by showing that a person with discriminatory animus toward the plaintiff influenced the 'actual' decisionmaker, even if the latter did not consciously discriminate against the plaintiff."). Moreover, even if Plaintiff had not alleged reliance on Roschelle's recommendation, Plaintiff's allegations regarding the: (1) procedurally irregular manner in which the decision to terminate her employment was reached; and (2) prextextual nature of the reasons given for that termination, see Am. Compl. ¶¶ 28-35, plausibly suggest that she was terminated because of her race. See James v. N.Y. Racing Ass'n, 233 F.3d

149, 156 (2d Cir. 2000) (noting that a court may rely upon "proof that the employer's explanation is false" in determining that an adverse employment action was discriminatory); Gallo, 22 F.3d at 1226-27 (finding sufficient evidence of discriminatory intent where employer's treatment of plaintiff violated its own policy); Bonura, N.A.,795 F.2d at 277 (same).

c. Retaliatory Termination

A plaintiff bringing a retaliation claim must demonstrate a causal relationship between her protected activity and a subsequent adverse action. See Rivera v. Rochester Genesee, 702 F.3d at 698. A plaintiff may demonstrate causation by, *inter alia*, "showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence." Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (quotation marks omitted). In general, a temporal gap of less than two months is sufficient to give rise to an inference of causation. See Mazurkiewicz v. N.Y.C. Health & Hosps. Corp., No. 09 Civ. 5962, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010). However, even much longer gaps may be bridged by an intervening pattern of retaliatory treatment. See Jute, 420 F.3d at 175 (noting that earlier, non-actionable acts of retaliation occurring soon after protected activity could show a "chain of events" connecting the protected activity and subsequent adverse actions); Chan v. NYU Downtown Hosp., No. 03 Civ. 3003, 2004 WL 213024, at *3 (S.D.N.Y. Feb. 3, 2004) ("[E]vidence of an intervening pattern of antagonism [after] the complaint . . . could support an inference that an alleged retaliatory act that was taken against the complainant was causally related to her complaint of discrimination."). Moreover, "[t]emporal proximity is just one method of demonstrating causation, and therefore the absence of temporal proximity does not demonstrate conclusively a lack of causation." Id., 2004 WL 213024, at *3. Evidence of pretext may alone suffice to defeat summary judgment on causation. See Xu-Shen

Zhou v. State Univ. of N.Y. Inst. of Tech., 499 F. App'x 105, 108-09 (2d Cir. 2012) (reversing grant of summary judgment to employer based on evidence of the falsity of defendants' termination explanations); Kessler v. Westchester Cnty. Dept. of Soc. Servs., 461 F.3d 199 (2d Cir. 2006) (same).

Defendant contends that Plaintiff has not alleged a sufficient temporal link between her protected activity and her termination. See Mem. at 8-9. As noted *supra*, because Plaintiff's Charge referenced her 2008 complaints of discrimination, she may premise a retaliation claim on this protected activity. A month after these complaints, Roschelle recommended Plaintiff's non-reappointment and leveled a number of allegedly pretextual criticisms against her. See Am. Compl. ¶¶ 34-35. This time-line plausibly suggests causation. Moreover, Plaintiff's extensive allegations, discussed *supra*, regarding the procedurally irregular process by which her employment was terminated and the pretextual nature of the reasons offered for her termination, are also indicative of causation. Plaintiff has therefore sufficiently alleged causation.

### B. § 1981 Claim

Defendant seeks dismissal of Plaintiff's § 1981 claim on Eleventh Amendment grounds. See Mem. at 2. "The Eleventh Amendment immunizes states and state agencies from suits that seek both monetary damages and injunctive relief." Kozaczek v. N.Y. Higher Educ. Servs. Corp., No. 10-CV-107, 2011 WL 3687379, at *4 (D.Vt. Aug. 23, 2011) (citing Cory v. White, 457 U.S. 85, 90-91 (1982); Alabama v. Pugh, 438 U.S. 781, 782 (1978)). SUNY and its universities constitute state agencies for purposes of the Eleventh Amendment. See Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990) ("SUNY is an integral part of the government for the State [of New York] and when it is sued the State is the real party." (internal quotation marks omitted)); Ideyi v. State Univ.

20

of N.Y. Downstate Med. Ctr., 09-CV-1490, 2010 WL 3938411, at \*4 (E.D.N.Y. Sept. 30, 2010) ("SUNY (including its subdivisions) . . . [is] entitled to the protection of sovereign immunity." (alterations in original)).

States may waive their sovereign immunity or Congress may abrogate that immunity pursuant to authority granted by a subsequent constitutional amendment. Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009); In re Deposit Ins. Agency, 482 F.3d 612, 623 (2d Cir. 2007). Plaintiff correctly notes that Congress did so in passing Title VII pursuant to its enforcement power under Section Five of the Fourteenth Amendment. See Resp. at 2; Nev. Dep't of Human Res. v. Hibbs, 538 U.S. 721, 729-30 (2003); Fitzpatrick v. Bitzer, 427 U.S. 445 (1976). However, "Congress has not abrogated the states' sovereign immunity under 42 U.S.C. § 1981." Ideyi, 2010 WL 3938411, at \*4. Furthermore, "[it]t is crystal clear . . . that New York has not consented to lawsuits in federal court against SUNY under . . . § 1981." Id. Plaintiff's § 1981 claim must therefore be dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 27) to dismiss is **GRANTED in part** and **DENIED in part** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 27) to dismiss is, to the extent it seeks dismissal of Plaintiff's: (1) Title VII discriminatory and retaliatory pay claims for compensation received prior to March 7, 2008; and (2) § 1981 claim, **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 27) is otherwise **DENIED**; and it is further

**ORDERED**, that Defendant's First Motion (Dkt. No. 14) to dismiss is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:          May 08, 2014
                Albany, NY



_____
        Lawrence E. Kahn
        U.S. District Judge